IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

GARRY STEELE,

       Plaintiff,               No. CIV S-05-1874 DAD P

   vs.

MARK McMAHON,             <u>ORDER</u>

       Defendant.

_____/

      Plaintiff, a former state prisoner, is proceeding pro se with a civil rights action seeking relief under 42 U.S.C. § 1983.  The matter is before the court on defendant's motion for summary judgment brought pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff  filed an opposition to the motion.  Defendant has filed a reply.  In addition, both parties have filed supplemental briefs addressing the recent decision in <u>Scott v. Harris</u>, __ U.S. __, 127 S. Ct. 1769 (2007) and its possible application to this case.

**PROCEDURAL HISTORY**

      On September 19, 2005, plaintiff filed this civil rights action against California Highway Patrol ("CHP") Officer Mark McMahon and the CHP, alleging that defendant McMahon used excessive force after stopping him for suspicion of driving under the influence of alcohol.  Plaintiff further alleged that the CHP was  responsible for the injuries inflicted by

1

1   defendant McMahon because it continued to employ McMahon despite his history of engaging in

2   the excessive use of force.  Plaintiff sought damages, court fees and any other relief the court

3   deemed just and proper.

4        At screening, the court determined that plaintiff's complaint stated cognizable

5   claims against defendant McMahon.  However, the court issued findings and recommendations,

6   recommending that the claims against the CHP be dismissed on Eleventh Amendment grounds.

7   On January 11, 2006, the assigned district judge adopted those findings and recommendations

8   and dismissed the CHP from the action.[1]

9                           **BACKGROUND**

10        In his complaint, plaintiff alleges that on September 11, 2004, Officer McMahon

11  pulled him over for suspicion of driving under the influence and, during the course of the stop,

12  struck him more than fifteen times with his baton.  Plaintiff's complaint alleges that he

13  responded to defendant McMahon's request for his driver's license and registration by informing

14  McMahon that he did not have a license because of a previous DUI conviction.  He also alleges

15  that when he told Officer McMahon that he could not perform field sobriety tests due to a foot

16  injury McMahon became agitated and hostile.  Plaintiff claims that McMahon told him that he

17  should put his hands behind his back by the count of three but before completing the count,

18  McMahon began hitting him repeatedly with his baton.  Accordingly, plaintiff alleges, he ran

19  back to his vehicle and drove away to escape further injury.  Plaintiff alleges that when he was

20  finally stopped by a CHP spike strip, which flattened all four of his tires, officer McMahon hit

21  him and forced him violently to the ground.

22        Plaintiff was administered a breath test, had photographs taken of his injuries, was

23  taken to San Joaquin County Hospital and was then transported by patrol car to the San Joaquin

24  _____

25        [1] Both parties subsequently consented to proceeding before the magistrate judge.
    Accordingly, on August 4, 2006, the case was reassigned to the undersigned for all further
26  proceedings including entry of judgment.  See 28 U.S.C. § 636(c).

                                2

County Jail where he was booked.  As a result of the incident, criminal charges were filed and on

March 10, 2005, plaintiff pled guilty to felony driving under the influence of alcohol with three

priors pursuant to California Vehicle Code § 23550 and felony driving with a willful or wanton

disregard for the safety of persons and property while attempting to elude a pursuing peace

officer in violation of California Vehicle Code § 2800.2.

        In the pending motion defendant McMahon argues that he is entitled to summary

judgment in his favor because the evidence presented in support of the motion establishes that:

(1) he used reasonable force in arresting plaintiff, a dangerous felony suspect; and (2) he is

entitled to qualified immunity with respect to plaintiff's claim.  (Def.'s Mot. for Summ. J. at 3 &

8.)  Plaintiff opposes the motion essentially on the grounds that the evidence he has submitted in

opposition establishes that the degree of force used by defendant McMahon was clearly

unreasonable and that no reasonable law enforcement officer could have believed otherwise.

        Below the court will address the applicable legal standards and the parties'

arguments and evidence to the extent necessary to resolve the pending motion.

## SUMMARY JUDGMENT STANDARDS UNDER RULE 56

        Summary judgment is appropriate when it is demonstrated that there exists "no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law."  Fed. R. Civ. P. 56(c).

        Under summary judgment practice, the moving party

> always bears the initial responsibility of informing the district court
> of the basis for its motion, and identifying those portions of "the
> pleadings, depositions, answers to interrogatories, and admissions
> on file, together with the affidavits, if any," which it believes
> demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  "[W]here the

nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary

judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers

to interrogatories, and admissions on file.'"  Id.  Indeed, summary judgment should be entered,

1  after adequate time for discovery and upon motion, against a party who fails to make a showing

2  sufficient to establish the existence of an element essential to that party's case, and on which that

3  party will bear the burden of proof at trial.  See id. at 322.  "[A] complete failure of proof

4  concerning an essential element of the nonmoving party's case necessarily renders all other facts

5  immaterial."  Id.  In such a circumstance, summary judgment should be granted, "so long as

6  whatever is before the district court demonstrates that the standard for entry of summary

7  judgment, as set forth in Rule 56(c), is satisfied."  Id. at 323.

8          If the moving party meets its initial responsibility, the burden then shifts to the

9  opposing party to establish that a genuine issue as to any material fact actually does exist.  See

10  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to

11  establish the existence of this factual dispute, the opposing party may not rely upon the

12  allegations or denials of its pleadings but is required to tender evidence of specific facts in the

13  form of affidavits, and/or admissible discovery material, in support of its contention that the

14  dispute exists.  See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11.  The opposing party

15  must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome

16  of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

17  (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.

18  1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could

19  return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433,

20  1436 (9th Cir. 1987).

21          In the endeavor to establish the existence of a factual dispute, the opposing party

22  need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the

23  claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

24  versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary

25  judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a

26  /////

genuine need for trial.'"  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory

committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson,

477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the

court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.

Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to

produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen

Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.

1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply

show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken

as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).

On November 23, 2005, the court advised plaintiff of the requirements for

opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.  See Rand v.

Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc); Klingele v. Eikenberry, 849 F.2d 409 (9th

Cir. 1988).

## OTHER APPLICABLE LEGAL STANDARDS

I.  Civil Rights Act Pursuant to 28 U.S.C. § 1983

The Civil Rights Act under which this action was filed provides as follows:

> Every person who, under color of [state law] . . . subjects, or causes
> to be subjected, any citizen of the United States . . . to the
> deprivation of any rights, privileges, or immunities secured by the
> Constitution . . . shall be liable to the party injured in an action at
> law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  The statute requires that there be an actual connection or link between the

actions of the defendants and the deprivation alleged to have been suffered by plaintiff.  See

1 | Monell v. Department of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362

2 | (1976).  "A person 'subjects' another to the deprivation of a constitutional right, within the

3 | meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts or

4 | omits to perform an act which he is legally required to do that causes the deprivation of which

5 | complaint is made."  Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

6 | II.  Excessive Force Claim

7 |        A claim that a law enforcement officer used excessive force during the course of

8 | an arrest is analyzed under the Fourth Amendment and an objective reasonableness standard.

9 | Graham v. Connor, 490 U.S. 386, 395 (1989).  This standard requires consideration of (1) the

10 | governmental interest at stake, (2) the need for the use of force, and (3) the amount of force used.

11 | See id. at 396; see also Scott v. Harris, 127 S. Ct. at 1778; Santos v. Gates, 287 F.3d 846 (9th

12 | Cir. 2002); Deorle v. Rutherford, 272 F.3d 1272, 1280 (9th Cir. 2001), cert. denied, 536 U.S. 958

13 | (2002); Liston v. County of Riverside, 120 F.3d 965, 976, 976 (9th Cir. 1997).

14 |        First, an analysis of the governmental interest at stake requires the balancing of a

15 | wide range of factors, including "(1) the severity of the crime at issue, (2) whether the suspect

16 | pose[d] an immediate threat to the safety of the officers or others . . . (3) whether he [was]

17 | actively resisting arrest or attempting to evade arrest by flight, and any other exigent

18 | circumstances [that] existed at the time of the arrest."  Deorle, 272 F.3d at 1280 (quoting

19 | Headwaters Forest Def. v. County of Humboldt, 240 F.3d 1285 (9th Cir. 2000), vacated and

20 | /////

21 | /////

22 | /////

23 | /////

24 | /////

25 | /////

26 | /////

1  remanded on other grounds, 534 U.S. 801 (2001)).[2]  See also Blankenhorn v. City of Orange, 485

2  F.3d 463, 477 (2007).

3          Second, the court considers whether there was a need for the use of such force.  It

4  has been explained that the need for the force used is the essence of the Graham objective

5  reasonableness analysis.  Liston, 120 F.3d at 976.  "'The force which was applied must be

6  balanced against the need for that force: it is the need for force which is at the heart of the

7  Graham factors.'"  Id. (quoting Alexander  v. City and County of San Francisco, 29 F.3d 1355,

8  1367 (9th Cir. 1994)).  This analysis was applied in Headwaters Forest Def. v. County of

9  Humboldt, where the court determined that it was unreasonable to use pepper spray repeatedly on

10  nonviolent, environmental protestors when such force was unnecessary to subdue, remove, or

11  arrest the protestors.  276 F.3d 1125, 1130 (9th Cir. 2002) (amended opinion).

12          Third, the court considers the amount of force used.  "Force is excessive when it

13  is greater than is reasonable under the circumstances."  Santos v. Gates, 287 F.3d 846, 854 (9th

14  Cir. 2002) (citing Graham, 490 U.S. 386)  For non-lethal force, "the degree of force used . . . is

15  permissible only when a strong governmental interest compels the employment of such force."

16  Deorle, 272 F.3d at 1280.  "Although it is undoubtedly true that police officers are often forced to

17  make split-second judgments, and that therefore not every push or shove, even if it may seem

18  unnecessary in the peace of a judge's chambers is a violation of the Fourth Amendment, it is

19  equally true that even where some force is justified, the amount actually used may be excessive."

20  Santos, 287 F.3d at 853 (internal quotations and citations omitted).  In determining whether the

21

22          [2]  In Deorle, the plaintiff had been shot in the head by police with a lead-filled beanbag,
    removing his left eye and lodging pieces of lead shot in his skull.  At the time police were
23  investigating a call of a suspect's "peculiar behavior."  Deorle, 272 F.3d at 1280.  Based on the
    objective facts and circumstances of the case, the court determined that it was clear from the
24  suspect's behavior that he was emotionally disturbed, unarmed and not a danger to others, and
    that there was no immediate need to subdue him.  Id. at 1282-83  The court held that it was not
25  enough for an officer to simply state that he feared for his safety or the safety of others; there
    must be objective factors to justify such a concern.  Id. at 1281.  The court concluded that under
26  the facts in that case, the governmental interest was not substantial.

7

1  force used is excessive it is appropriate to consider whether a warning was given before force

2  was used.  See Deorle, 272 F.3d at 1285 ("Less than deadly force that may lead to serious injury

3  may be used only when a strong governmental interest warrants its use, and in such

4  circumstances should be preceded by a warning, when feasible.")

5  III.  Qualified Immunity

6          "Qualified immunity is 'an entitlement not to stand trial or face the other burdens

7  of litigation.'"  Saucier v. Katz, 533 U.S. at 200 (quoting Mitchell v. Forsyth, 472 U.S. 511, 526

8  (1985)).  It provides "an immunity from suit rather than a mere defense to liability' . . . ."  Id.

9  (quoting Mitchell, 472 U.S. at 526).

10          The Supreme Court has held that the threshold question in determining whether

11  qualified immunity applies is: "Taken in the light most favorable to the party asserting the injury,

12  do the facts alleged show the officer's conduct violated a constitutional right?"  Saucier, 533 U.S.

13  at 201.  See also Skoog v. County of Clackamas, 469 F.3d 1221, 1229 (9th Cir. 2006).  If there is

14  constitutionally impermissible conduct, defendants "may nevertheless be shielded form liability

15  for civil damages if their actions did not violate 'clearly established statutory or constitutional

16  rights of which a reasonable person would have known.'"  Hope v. Pelzer, 536 U.S. 730, 739

17  (2002) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  This is a two-part inquiry: "(1)

18  Was the law governing the state official's conduct clearly established?  (2) Under that law could

19  a reasonable state official have believed his conduct was lawful?"  Jeffers v. Gomez, 267 F.3d

20  895, 910 (9th Cir. 2001) (quoting Browning v. Vernon, 44 F.3d 818, 822 (9th Cir. 1995).  This

21  standard "gives ample room for mistaken judgments by protecting all but the plainly incompetent

22  or those who knowingly violate the law."  Id. (quoting Hunter v. Bryant, 502 U.S. 224, 229

23  (1991) (internal quotations omitted)).

24          For a constitutional right to be clearly established, "[t]he contours of the right

25  must be sufficiently clear that a reasonable official would understand that what he is doing

26  violates that right.  This is not to say that an official action is protected by qualified immunity

1    unless the very action in question has previously been held unlawful; but it is to say that in the

2    light of pre-existing law the unlawfulness must be apparent." Anderson v. Creighton, 483 U.S.

3    635, 640 (1987) (citation omitted). See also Hope v. Pelzer, 536 U.S. at 739; Saucier, 533 U.S.

4    at 202; Wilson v. Layne, 526 U.S. 603, 615 (1999) ("[A]s we explained in Anderson, the right

5    allegedly violated must be defined at the appropriate level of specificity before a court can

6    determine if it was clearly established.")  This level of specificity is required because "[i]f the

7    law did not put the officer on notice that his conduct would be clearly unlawful, summary

8    judgment based on qualified immunity is appropriate." Saucier, 533 U.S. at 202.

9            In order to determine whether a reasonable state official could have believed his

10   conduct was lawful, the court must "consider whether, viewing the evidence in the light most

11   favorable to plaintiffs, [the defendant's] conduct was objectively reasonable." P.B. v. Koch, 96

12   F.3d 1298, 1301 (9th Cir. 1996) (citing Behrens v. Pelletier, 516 U.S. 299, 309 (1996)); see also

13   Anderson, 483 U.S. at 639.  The defendant bears the burden of proving that a reasonable official

14   could not have known that his actions violated the plaintiff's clearly established rights. Allen v.

15   Sakai, 48 F.3d 1082, 1087 (9th Cir. 1994).

16           "In excessive force cases, the inquiry remains whether 'under the circumstances, a

17   reasonable officer would have had fair notice that the force employed was unlawful, and

18   [whether] any mistake to the contrary would have been unreasonable." Boyd v. Benton County,

19   374 F.3d 773, 781 (9th Cir. 2004) (alteration in original) (quoting Drummond v. City of

20   Anaheim, 343 F.3d 1052, 1060 (9th Cir. 2003). See also  Blankenhorn, 485 F.3d at 481; Deorle,

21   272 F.3d at 1285.

22   /////

23   /////

24   /////

25   /////

26   /////

1       **DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

2   I. Defendant's Statement of Undisputed Facts and Evidence

3           Defendant's statement of undisputed facts is supported by the declarations of

4   defendant McMahon[3] and Deputy Attorney General Jeff Vincent.[4]

5           Defendant presents the following version of the events of September 11, 2004

6   based upon his evidence.  At approximately 4:30 p.m., a man identifying himself as an off-duty

7   fire fighter approached Officer McMahon and informed him that he had seen plaintiff throw

8   away an empty beer can at a gas station and that plaintiff appeared to be drunk.  Officer

9   McMahon then followed plaintiff as he drove out of the gas station and observed plaintiff weave

10  several times onto the shoulder of the highway before initiating a traffic stop.  Officer McMahon

11  approached the driver's side and spoke to plaintiff through the vehicle's open window.  Officer

12  McMahon could smell the odor of alcohol in the vehicle and on plaintiff's breath.  Upon request,

13  /////

14

15      [3] Attached to the McMahon declaration as Exhibit A is a copy of an alcohol breath test
    administered to plaintiff at 5:45 p.m. on the day in question reflecting a blood alcohol level of .16
16  and .17.

17      [4] Attached to the Vincent declaration are the following: Exhibit B is an excerpt from
    plaintiff's August 17, 2006 deposition, in which plaintiff attested to his responses to requests for
18  admissions; Exhibit C is an excerpt from plaintiff's deposition in which he attested to his
    answers to interrogatories; Exhibit D is a copy of the abstract judgment reflecting plaintiff's
19  conviction on felony charges of driving under the influence and eluding a peace officer; Exhibit
    E is a copy of a National Highway Transportation Safety Administration Publication DOT HS
20  809 904 "Alcohol-Related Fatalities in 2004"; Exhibit F is a copy of Statewide Integrated Traffic
    Records System 2004 Annual Report of Fatal and Injury Motor Vehicle Traffic Collisions,
21  Tables 5A-5Q; and Exhibit G is a copy of an article titled "Six Funerals, Infinite Sorrow,"
    published in the Sacramento Bee on September 19, 2006.  Defendant requests that the court take
22  judicial notice of Exhibits D-G.  Judicial notice of adjudicative facts is appropriate with respect
    to matters that are beyond reasonable dispute in that they are either generally known or capable
23  of accurate and ready determination by resort to a source whose accuracy cannot reasonably be
    questioned.  See Fed. R. Evid. 201 and advisory committee notes.  Good cause appearing, the
24  court will grant defendant's request with respect to Exhibit D to the Vincent declaration solely
    for purposes of this motion for summary judgment.  However, defendant has not established the
25  relevance of Exhibits E, F, and G to the disposition of the pending motion and the request will be
    denied with respect to those exhibits.  See Carpenters S. Ca. Admin. Corp. v. Knight, 207 F.3d
26  1115, 1119 n.4 (9th Cir. 2000) (denying request for judicial notice of irrelevant facts).

1  plaintiff produced a California Identification Card and told Officer McMahon that his driver's

2  license had been suspended due to a previous DUI conviction.

3          Officer McMahon then requested that plaintiff exit the vehicle and perform five

4  field sobriety tests.  Plaintiff was unable to perform any of the tests satisfactorily.  Officer

5  McMahon requested that plaintiff submit to a preliminary alcohol screening test.  Plaintiff

6  complied and the device indicated a blood alcohol level of .19.  At that time Officer McMahon

7  informed plaintiff that he was under arrest for driving under the influence of alcohol and directed

8  plaintiff to put his hands on his head and turn around.  Plaintiff did not place his hands on his

9  head or turn around as directed.  As McMahon reached to place plaintiff in a control hold to take

10  him into custody, plaintiff violently pulled his hand away to resist.  McMahon drew his baton,

11  held it ready to strike and ordered plaintiff to the ground.  Plaintiff did not comply with the order

12  but instead moved toward McMahon, who swung his baton at plaintiff.  Plaintiff then fled to his

13  vehicle and sped away, despite Officer McMahon's continued efforts to effect his arrest.

14          Officer McMahon pursued in his patrol car as plaintiff drove in a reckless manner,

15  evading capture for almost fifteen minutes.  At approximately 4:45 p.m., CHP Officer Jeffrey

16  Steele deployed a spike strip, flattening all four of plaintiff's tires and disabling his vehicle.

17  McMahon ordered plaintiff  to exit the vehicle.  Plaintiff continued to resist the efforts of officers

18  to handcuff and arrest him and the officers were required to force plaintiff to the ground to

19  handcuff him.

20          On March 10, 2005, plaintiff was convicted of felony driving under the influence

21  of alcohol with three priors pursuant to California Vehicle Code § 23550 and of felony driving

22  with a willful or wanton disregard for the safety of persons and property while attempting to

23  elude a pursuing peace officer in violation of California Vehicle Code § 2800.2.

24          Officer McMahon states in his declaration that he employed only the force that

25  was reasonable and necessary in light of plaintiff's failure to cooperate, his resistance to arrest

26  and the grave threat plaintiff posed to the safety of other persons by driving while intoxicated.

11

II.  Defendant's Arguments

   Based on this evidence, defendant McMahon argues that the court should grant his motion for summary judgment because: (1) he used reasonable force in arresting a dangerous felony suspect; and (2) he is entitled to qualified immunity with respect to plaintiff's § 1983 claim.  (Def.'s Mot. for Summ. J. at 3 & 8.)

   With respect to plaintiff's excessive use of force claim, McMahon argues that summary judgment is appropriate because under the standard announced by the United States Supreme Court in Graham v. Connor, 490 U.S. 386 (1989), his use of force in arresting plaintiff was reasonable.  (Def.'s Mot. for Summ. J. at 3-4.)  Defendant notes that the right to make an arrest necessarily carries with it the right to use some degree of physical coercion or threat to effect it and that the court should consider the severity of crime at issue, whether the suspect posed an immediate threat to the safety of the officers or others, and whether the suspect was resisting arrest or attempting to evade arrest by flight in assessing the reasonableness of the officer's conduct.  (Def.'s Mot. for Summ. J. at 4; Def.'s Reply at 4-5.)  McMahon argues that here the use of force was justified because plaintiff was a potentially a repeat DUI offender, was driving while severely intoxicated when his licence had been suspended for a previous DUI conviction, posed a grave danger to himself and others on the road and had resisted arrest and fled.  (Def.'s Mot. for Summ. J. at 6 & 8; Def.'s Reply at 5-6.)   He also argues that under the holding in Graham, police conduct must be judged from the perspective of the officers on the scene at the time of the incident.  He contends that his actions, including his use of his baton, were "objectively reasonable" in light of the facts and circumstances confronting him.  (Def.'s Mot. for Summ. J. at 5-8.)

   In arguing for summary judgement in his favor on his affirmative defense of qualified immunity, defendant McMahon notes that under the Supreme Court's decision in Saucier v. Katz, 533 U.S. 194 (2001), qualified immunity shields an officer from liability when he makes a decision that, even if constitutionally deficient, reasonably misapprehends the law

1   governing the circumstances he confronted.  (Def.'s Mot. for Summ. J. at 8.)  McMahon argues

2   that his actions were entirely consistent with constitutional standards applicable to detention and

3   arrest of dangerous felony suspects.  (Id. at 11.)  He further argues that a reasonable officer under

4   the same circumstances would have believed his conduct to be lawful since his actions were not

5   "plainly incompetent" and he did not "knowingly violate the law."  (Id.)  Finally, defendant

6   McMahon contends that even if the amount of force he used was not objectively reasonable, so

7   long as the mistake as to how much force could be used under the particular circumstances was

8   reasonable, he is entitled to qualified immunity.  (Id. at 11-12.)

9   III.  Plaintiff's Statement of Undisputed Facts and Evidence

10              Plaintiff has reproduced defendant's statement of undisputed facts and admitted

11   those facts he does not dispute and denied the others.  Plaintiff's opposition to the motion for

12   summary judgment is supported by his own declaration signed under penalty of perjury;

13   photographs of his injuries dated September 11, 2004; excerpts of his own deposition; a report by

14   the United Nations Human Rights Committee entitled "In the Shadows of the War on Terror:

15   Persistent Police Brutality and Abuse in the United States" (May 2006); and a Wikipedia article

16   discussing tunnel vision.[5]

17              In many respects plaintiff agrees with defendant McMahon's statement of

18   undisputed facts and those agreed upon facts will not be repeated.  However, on certain material

19   issues, plaintiff's evidence paints a far different picture than that portrayed by the defense.

20   Addressing what occurred after he was administered the field sobriety tests and completed the

21   preliminary alcohol screening test, plaintiff states in his declaration that:

22   /////

23

24       [5]   Plaintiff requests that the court take judicial notice of "In the Shadows of the War On
     Terror" and the Wikipedia article.  Defendant objects on the grounds that both are irrelevant, not
     the appropriate subject for judicial notice, hearsay and not authenticated.  (Def.'s Dec. 21, 2006
25   Objs. at 1-3.)  The objection is well-taken.  Neither the report nor the article meet the
     requirements of  Fed. Rule Evid. 201.  See fn. 4, supra.  Accordingly, the court will deny
26   plaintiff's request.

1            After the tests were completed, Officer McMahon told me
     that I was under arrest and that he was going to count to three and
2    that once he got to three, I was to turn around with my hands
     behind my back.  At this time, I did not try to run nor did I attempt
3    to hit the officer.

4            Officer McMahon did not attempt to grasp my hand and I
     did not pull away from him.  I did not resist him and I did not
5    move towards him before he started hitting me with his baton.  As
     Officer McMahon started to count, I closed my eyes and Officer
6    McMahon counted to one, then two, and he immediately began
     hitting me with his baton.

7
             As Officer McMahon was hitting me with his baton, I ran
8    to my vehicle and he continued to hit me as I ran and when I was
     back inside my vehicle.

9
             I jumped inside my vehicle, at which time Officer
10   McMahon attempted to grab me.  I started my vehicle and drove
     away in an attempt to evade either being seriously injured or killed
11   by Officer McMahon.

12   (Decl. of Garry Steele in Opp'n to Def.'s Mot for Summ. J. at 2.)[6]  When his vehicle was

13   ultimately stopped through the use of a spike strip, plaintiff declares that he exited as requested

14   and that upon doing so defendant McMahon "kneed" him in the back, threw him down and

15   smashed his face into the ground, while Officer Steele never touched him.  (Id.)[7]

16   IV.  Plaintiff's Arguments

17           Based on this evidence, plaintiff argues that the court should deny defendant's

18   motion for summary judgment because defendant McMahon's use of excessive force in effecting

19   his arrest and detention was unreasonable.  In this regard, plaintiff contends that there is evidence

20   before the court establishing that when McMahon decided to arrest him he said that by the count

21   of three plaintiff was to turn around and place his hands behind his back but instead McMahon

22   _____

23        [6]  This account appears to be essentially consistent with plaintiff's deposition testimony.
     (See Depo. of Garry Steele, Aug. 17, 2005 at 28-30.)

24        [7]  Plaintiff's account differs from defendant McMahon's in certain other respects.  For
     instance, plaintiff denies that he was driving erratically or weaving before being pulled over
25   initially by McMahon.  (Decl. of Garry Steele in Opp'n to Def.'s Mot for Summ. J. at 1.)  But
     none of these other factual disputes are material for purposes of resolving the motion pending
26   before the court.

1    quickly counted to two and began hitting plaintiff with his baton.  Plaintiff contends that this was

2    an unreasonable use of force.  (Pl.'s Opp'n to Def.'s Mot. for Summ. J. at 5.)[8]  Plaintiff argues

3    that even if defendant McMahon initially felt justified in hitting plaintiff, there was a point when

4    no such justification could exist and yet McMahon continued to hit plaintiff with his baton more

5    than 15 times.  (Id. at 7.)  He asserts that his only defense was to run, which was a reasonable

6    reaction in light of the circumstances.  (Id. at 6.)

7            With respect to the affirmative defense of qualified immunity, plaintiff argues that

8    the motion for summary judgment should be denied because in light of plaintiff's evidence

9    defendant McMahon could not have believed his actions were lawful.  Plaintiff contends that

10   since there are material issues of fact as to what occurred that remain in dispute, the question of

11   qualified immunity should wait until those factual disputes are resolved.  (Pl.'s Opp'n to Def.'s

12   Mot. for Summ. J. at 9.)

13           In conclusion, plaintiff argues that the outcome of this case turns on the credibility

14   of witnesses, and therefore, it should not be decided on summary judgment.  In addition, plaintiff

15   argues that the central facts of the case are in dispute, including whether defendant McMahon

16   overstepped the bounds of the law and whether defendant's actions exacerbated plaintiff's

17   /////

18   /////

19   /////

20   /////

21   /////

22

23           [8]  Plaintiff also contends that at in his police report and at plaintiff's preliminary hearing
     in his criminal case, Officer McMahon made statements inconsistent with his declaration in
24   support of his summary judgment motion.  Specifically, plaintiff argues that in his police report
     McMahon stated that plaintiff had violently resisted arrest by pulling out of a control hold and
25   swinging his arms at the officer as he advanced while at the preliminary hearing McMahon
     testified that plaintiff did not verbally threaten him, did not have a weapon and did not hit him.
26   (Pl.'s Opp'n to Def.'s Mot. for Summ. J. at 5.)

1   preexisting back injury.[9]  Therefore, he argues, defendant's motion for summary judgment should

2   be denied.  (Pl.'s Opp'n to Def.'s Mot. for Summ. J. at 12-13.)

3                                              **ANALYSIS**

4   I.  Excessive Force Claim

5              If the evidence submitted by defendant McMahon in support of his motion for

6   summary judgment were uncontroverted, he would clearly be entitled to summary judgment in

7   his favor on plaintiff's claim of excessive use of force.  However, such is not the case.  Plaintiff

8   has submitted a declaration subscribed under penalty of perjury and has testified under oath at his

9   deposition to a very different set of facts.  According to plaintiff, the encounter was a cooperative

10  one until he was told to turn around and put his hands behind his back at the count of three but

11  before that count occurred, defendant McMahon without warning began beating him with his

12  baton.  Plaintiff's sworn statements about events that happened to him, if believed, are sufficient

13  to prove his claim of excessive force.  See Graham, 490 U.S. at 396-97; Tennessee v. Garner,

14  471 U.S. 1, 7-8 (1985) ("The Fourth Amendment requires police officers making an arrest to use

15  only an amount of force that is objectively reasonable in light of the circumstances facing them");

16  Santos, 287 F.3d at 853; Deorle, 272 F.3d at 1285.

17             On summary judgment the court may not weigh the parties' evidence or determine

18  the truth of the matters asserted by the parties; rather the court is required only to determine

19  whether there is a genuine issue of material fact appropriately resolved by trial.  See Summers v.

20  A. Teichert & Son. Inc., 127 F.3d at 1152.  Here, the court finds that there are material questions

21

22             [9]  Plaintiff alleges that defendant's use of excessive force exacerbated his preexisting
    back injury.  In connection with this summary judgment motion, defendant has objected to
23  plaintiff's unsworn statement regarding his back injuries on the grounds that it is hearsay and
    improper lay opinion.  (Def.'s Dec. 21, 2006 Objs. at 3; Def.'s Reply at 6.)  Plaintiff has since
24  filed a declaration addressing this subject, signed under penalty of perjury, and requests that
    judicial notice by taken of the declaration.  Although of little or no relevance to the pending
25  motion, the court will accept the declaration as evidence.  However, such a declaration is not an
    appropriate subject for judicial notice under Fed. R. Evid. 201.  Accordingly, the court will deny
26  plaintiff's request.

1  of fact in dispute surrounding the confrontation including the amount of force defendant

2  McMahon used, the circumstances under which he used that force and with respect to any

3  injuries suffered by plaintiff as a result.  Accordingly, defendant McMahon's motion for

4  summary judgment on plaintiff's excessive force claim will be denied.[10]

5  II.  Affirmative Defense of Qualified Immunity

6          Given the disputed issues of material fact addressed above, summary judgment in

7  favor of defendant McMahon on his affirmative defense is appropriate "only if [he is] entitled to

8  qualified immunity on the facts as alleged by the non-moving party."  Blankenhorn, 485 F.3d at 4

9  477 (citing Barlow v. Ground, 943 F.2d 1132, 1136 (9th Cir. 1991)).

10          First, as noted above, if plaintiff's sworn statements about the events are believed

11  they are sufficient to prove his claim of excessive use of force in violation of his constitutional

12  rights.  Second, if plaintiff's version is accepted, the state of the law in 2004 clearly would have

13  given defendant McMahon fair warning that such conduct was unconstitutional.  As the United

14  States Supreme Court has recognized,

15          general statements of the law are not inherently incapable of giving
        fair and clear warning, and in other instances a general
16          constitutional rule already identified in the decisional law may
        apply with obvious clarity to the specific conduct in question, even
17          though "the very action in question has [not] previously been held
        unlawful."

18

_____

19          [10]  The Ninth Circuit has repeatedly cautioned lower courts to take care in deciding
    excessive force cases at the summary judgment stage.  The court has explained that:

20

21          Because [the excessive force inquiry] nearly always requires a jury
        to sift through disputed factual contentions, and to draw inferences
        therefrom, we have held on many occasions that summary
22          judgment or judgment as a matter of law in excessive force cases
        should be granted sparingly.  This is because police misconduct
23          cases almost always turn on the jury's credibility determinations.

24  Santos, 287 F.3d at 853.  See also Smith v. City of Hemet, 394 F.3d 689, 701 (9th Cir. 2005);
    Lolli v. County of Orange, 351 F.3d 410, 415-16 (9th Cir. 2003).  This case is no different.  A
25  jury must determine the circumstances Officer McMahon confronted, whether he was justified in
    using force under those circumstances and whether the amount of force he actually used was
26  reasonable.

1   Lanier, 520 U.S. at 271 (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)).  See also

2   Hope, 536 U.S. at 39-41; Drummond, 343 F.3d at 1061.  One need look no further than Graham

3   and Garner to find decisions that certainly would have put a reasonable law enforcement officer

4   on notice that repeatedly striking a DUI suspect with a baton without provocation would be a

5   violation of his Fourth Amendment rights.  See, e.g., Blankenhorn, 485 F.3d at 481 (Graham's

6   clear principle would have put a prudent officer on notice that gang-tackling, punching, and using

7   hobble restraints violated plaintiff's Fourth Amendment rights).

8          For these reasons defendant McMahon is not entitled to summary judgment in his

9   favor with respect to his affirmative defense of qualified immunity.[11]

10                                 **CONCLUSION**

11          Accordingly, IT IS HEREBY ORDERED that:

12          1.  Defendant's September 29, 2006 request that the court take judicial notice of

13   Exhibits D-G to the Vincent declaration is granted in part and denied in part;

14          2.  Plaintiff's December 7, 2006 request that the court take judicial notice is

15   denied;

16          3.  Plaintiff's August 13, 2007 request that the court take judicial notice of the

17   transcript of his preliminary hearing and the order issued in response to his Pitchess motion in his

18   /////

19

20          [11]  The court has considered the parties' supplemental briefs addressing the decision in
21   Scott v. Harris, ___ U.S. ___, 127 S. Ct. 1769 (2007) and its possible application to this case.
     However, the court finds that the decision in Scott does not assist in resolution of the pending
22   motion.  First, in Scott the Supreme Court found that because the record included a videotape of
     the entire high-speed chase at issue, there could be no dispute of material fact with respect to the
23   situation the officers confronted and that the plaintiff's version of events had been "utterly
     discredited" by the videotape.  127 S. Ct. at 1775-76.  No such indisputable evidence is contained
24   in the record before the court on this motion.  Rather the identified disputed issues of material
     fact are supported by the evidence of record.  Second, deadly force may reasonably be used to
25   stop a suspect engaged in a high-speed chase that posed an imminent threat to the lives of
     innocent pedestrians and motorists.  127 S. Ct. at 1778.  The same obviously cannot be said of,
26   accepting plaintiff's evidence as true as the court must, beating a DUI suspect with a baton
     without provocation or cause.

1  state court criminal case is granted and his request that judicial notice be taken of his declaration

2  addressing his back injury is denied; and

3          4.  Defendant's motion for summary judgment is denied.

4  DATED: September 21, 2007.

5

6  _____

7  DALE A. DROZD
   UNITED STATES MAGISTRATE JUDGE

8  DAD:9
   stee1874.57.2

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26